UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                        Case Number 10-20677
                                         Honorable Thomas L. Ludington

v.

MELVIN HOSKINS,

       Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND DETERMINING EXCLUDABLE DELAY

During the spring of 2009, Defendant Melvin Hoskins was the subject of investigation by law enforcement for crack cocaine trafficking. A series of undercover purchases were arranged with Defendant. The undercover deliveries of narcotics were made by Defendant and Monica Howell.

On April 20, 2009, shortly after one of the controlled purchases, officers arrested Defendant on White Street in Bay City, Michigan. After Defendant's arrest, officers proceeded to 400 South Wenona in Bay City, where they were admitted into the residence by Anthony Hicks. Hicks explained to the officers that he owned the residence but rented rooms to Defendant and Kwenji Vance. Hicks', Defendant's, and Vance's rooms were each locked. Defendant's room, in particular, was padlocked from the outside. Officers entered the Defendant's room using a key taken from Defendant at the time of his arrest.

A warrant was subsequently obtained. It authorized the entry and search of the residence "commonly known as 400 South Wenona Street" as well as the persons of Melvin Hoskins and Monica Howell, two named vehicles and other persons or vehicles on the premises. The searches

and seizures ultimately resulted in the discovery of evidence, including narcotics and currency, expected to be introduced by the government at the trial of this case. After seizure of items from his room, Defendant made statements regarding the room and its contents to law enforcement officers.

On November 10, 2010, Defendant was indicted by a federal grand jury for conspiracy to possess with intent to distribute and to distribute 50 grams or more of crack cocaine for tranactions that occurred from approximately 1990, the precise time unknown, until on or about April 20, 2009 (Count 1); knowingly distributing crack cocaine from approximately April 14, 2009 to April 20, 2009  (Counts 2-4); and knowingly using and maintaining his residence for the purpose of distributing and using controlled substances including crack cocaine, heroin, and marijuana from a time unknown to on or about April 20, 2009 (Count 5).

On April 1, 2011, Defendant filed a motion to suppress the evidence seized when the warrantless search and seizure was executed, as well as any derivative evidence resulting from the warrantles search.  An amended motion to suppress evidence was filed the same day.  ECF No. 16. Defendant contends that the law enforcement officers illegally entered and searched Defendant's room at 400 South Wenona without a search warrant, that the search warrant subsequently executed for the entire building at 400 South Wenona was unconstitutional because it failed to particularly describe the place to be searched, and that the searches and seizures were conducted in violation of Defendant's Fourth Amendment rights.  The government responds that Defendant does not have standing to challenge the search and seizure because he did not have a separate "residence" at 400 South Wenona and because the building is a single residence, the search warrant properly described the place to be searched.  For the reasons provided herein, Defendant's motion will be denied.

-2-

**I**

The government, as a threshold matter, challenges Defendant's standing for bringing a motion to suppress. Defendant alleges that 400 South Wenona is a single house but with separate residences. The owner of the residence rents two of the bedrooms in the house to other individuals but the bedrooms do not contain bathrooms, kitchens or other facilities. The government, as a result, disputes Defendant's allegation that the premises contained "separate residences."

Defendant has the burden of demonstrating his legitimate expectation of privacy regarding the search of the entire premises, or of areas within the residence claimed by him to be private, and the evidence seized therefrom, before the question of the legality of the search at issue can be considered. *See, e.g.*, *Alderman v. United States*, 394 U.S. 165, 174 (1969)("Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted."); *Katz v. United States*, 389 U.S. 347, 353 (1967).

It is "the established rule that a court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights. The defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *United States v. Payner*, 447 U.S. 727, 731 (1980)(emphasis in original)(citation omitted). For this reason, "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman*, 394 U.S. at 171-172; *see also United States v. Salvucci*, 448 U.S. 83, 86-87, 94 (1980); *Rakas v. Illinois*, 439 U.S. 128, 133-34, 134 n.3, 137-38 (1978).

The defendant, as "[t]he proponent of a motion to suppress[,] has the burden of establishing

-3-

that his own Fourth Amendment rights were violated by the challenged search . . ." *Rakas*, 439 U.S. at 131, n.1. To prevail, the defendant must show "not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in [the area or item that was searched]." *Rawlings*, 448 U.S. at 104. When, as here, the defendant's allegations regarding the requisite privacy interest are contested, the defendant is "put to [his] proof . . . [on the] issue[,]" *Rakas*, 439 U.S. at 131 n.1, and must "establish" . . . that he himself was the victim of an invasion of privacy." *Alderman*, 394 U.S. at 173 (quoting *Jones v. United States*, 362 U.S. 257, 261 (1960).

A determination of whether a legitimate expectation of privacy exists involves a two-part inquiry. First, the Court must ask "whether the individual, by conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he has sought to preserve something as private." *United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000) (citing *Bond v. United States*, 529 U.S. 334, 338 (2000)). Next, the Court must "inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *Id.*

Defendant provided testimony at the July 12, 2011 evidentiary hearing and, for the reasons stated on the record, the Court concluded that Defendant had met his burden of proof with respect to his legitimate expectation of privacy within his leased bedroom.

## II

Defendant first contests the warrantless entry made into the residence and, more specifically, his bedroom. A search conducted without a warrant issued by a magistrate, as occurred here, is "per se unreasonable under the Fourth Amendment - - subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347 (1967); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The Government must assume the burden of proving that an exception

-4-

to the warrant requirement existed after the Defendant has established that the seizure was made without a warrant. The burden is on those seeking an exception from the warrant requirement to show the need for the exception. *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *Chimel v. California*, 395 U.S. 752, 762 (1969); *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971).

It is well-recognized "that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). The exigent circumstances exception requires the government to "show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988); *United States v. Buchanan*, 904 F.2d 349, 354 (6th Cir. 1990). To rely upon the exigent circumstances exception, a police officer must show an "objectively reasonable" belief that contraband will be destroyed within a residence. He must demonstrate: (1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the police are on their trail. *Id.* Protection against a remote eventuality is not the type of circumstances that creates an urgent need for immediate action. *See id.* Police who believe they have probable cause to search cannot enter a residence without a warrant "merely because they plan subsequently to get one." *United States v. Griffin*, 502 F.2d 959, 961 (6th Cir. 1994).

Defendant challenges the search of his bedroom as falling outside the exigent circumstances exception to the warrant requirement. As an initial matter, the officers' entry into the common areas of the residence was lawful because it was made pursuant to Hicks' consent. At the hearing, Hicks testified that most of the house was occupied by all three residents in common, but that each had control over their own bedroom. Thus, Hicks had authority to consent to the officers' entry into the

common areas of the residence. *United States v. Thompson*, 524 F.3d 1126, 1133 (10th Cir. 2008)
(The owner of a premises may consent to the search of areas of the premises that the tenant does not
exclusively control); *see also United States v. Ayoub*, 498 F.3d 532, 539-40 (6th Cir. 2007)
(Daughter validly consented to search of parents' residence while the parents were away from home
because daughter had control over residence).

        The government contends that exigent circumstances justify entry into both the residence
for several reasons. First, the government explains that the officers were entitled to enter Plaintiff's
bedroom to prevent the probable destruction of evidence. *Kentucky v. King*, __ U.S. __, 131 S.Ct.
1849, 1853-62 (2011); *United States v. Adamo*, 742 F.2d 927, 948 (6th Cir. 1984). Indeed, "[w]here
. . . the police did not create the exigency by engaging or threatening to engage in conduct that
violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is
reasonable and thus allowed." *King*, 131 S. Ct. at 1858. At the time of Defendant's arrest on White
Street, the officers observed Defendant making a call on his cell phone immediately after he had
made a crack cocaine sale to a confidential informant. An officer involved in the stop, Gregory Potts,
had prior contact with Defendant in two other cases and was concerned that upon recognizing the
officer's face, Defendant would conclude that he had been stopped because of the crack cocaine sale
he had just conducted. ECF No. 26 Ex. 1. Potts knew that Defendant had a girlfriend and other
associates that participated in his "drug business" by making deliveries for him, as well as the fact
that Defendant had a significant number of customers. *Id.* The officers were, as a result, concerned
that Defendant was arranging for an associate to destroy evidence at his residence before a search
warrant could be obtained. Potts concluded that there were exigent circumstances that justified
securing and observing Defendant's residence while a warrant was being obtained. The fact that

-6-

other possible explanations for the activities observed by the surveilling officers existed is irrelevant, as long as the officers were able to articulate factors which gave them probable cause to believe that evidence of a crime was being lost. *United States v. Delguyd*, 542 F.2d 346, 351 (6th Cir.1976).

Second, the government explains that entry into Defendant's locked room was appropriate to secure the premises and the evidence it was believed to contain. *See Adamo*, 742 F.2d at 948 (concluding that warrantless entry for the purpose of securing the premises was justified by exigent circumstances). Defendant disputes that entry into his bedroom was proper because the door to his room was secured by a padlock on the outside and thus there was no reasonable risk of someone located within the room.  Defendant argues that the padlock on the outside made the possibility of a person being inside the room so remote as to be nearly impossible and there had been no other indications that a person may be inside the room. The officers were, however, in Defendant's room for "less than a minute" and only so they could "clear it and exit[] the room."  Hr'g Tr. 33, July 12, 2011. Defendant acknowledged at the hearing that no evidence was seized during the initial entry into his room before the search was conducted pursuant to the warrant.

The government responds that despite the remote possibility that someone may have been inside Defendant's room, it was not impossible. Locking a person into a room is a repeated phenomena in the annals of criminal law. *E.g. United States v. Sanford*, 2009 WL 2197373, *1 (M.D. Ala. 2009) (Informant observed that drug dealer kept a woman locked in a room in the house where the dealer lived and sold drugs); *United States v. Juarado-Lopez*, 338 F. Supp. 2d 246, 253 (D. Mass. 2004) (Drug "mule" was locked in a room and forced to insert packages into her body cavities;  *McWhorter v. United States*, 281 F. 119, 120 (6th Cir. 1922) (Two people locked in a room and regularly given narcotics). It was therefore appropriate for the officers to open the lock

-7-

on the door and enter Defendant's room to ensure that the room was "clear" of any person who might threaten the safety of others present or otherwise be engaged in criminal conduct. That conduct could well include destroying evidence by a variety of means, including by consuming it. There is nothing to suggest that the items subsequently seized from Defendant's room were observed during the protective sweep, and these items were not used to demonstrate probable cause in the affidavit for the search warrant. ECF No. 26 Ex. 1; Hr'g Tr. 32. Defendant's motion to suppress the evidence that was seized from his room will be denied.

### Validity of the Search Warrant

Defendant also contends that 400 South Wenona contains three separate residences. Each room of the building has a locked door rendering it private and protected. Defendant submits that the police offers knew that 400 South Wenona consisted of three separate residences before they sought the warrant but that the warrant did not "particularly describ[e] the place to be searched." This, Defendant argues, violated the Fourth Amendment.

"[W]hen the structure under suspicion is divided into more than one occupancy unit, probable cause must exist for each unit to be searched." *United States v. Shamaeizadeh*, 80 F.3d 1131, 1137 (6th Cir. 1996) (citation and quotation omitted). Courts have repeatedly concluded that warrants are invalid if they permit searches on multiple residential units when probable cause only exists for a single unit. *See, e.g.*, *United States v. Hinton*, 219 F.2d 324 (6th Cir. 1955); *United States v. Higgins*, 428 F.2d 232 (7th Cir. 1970); *United States v. Busk*, 693 F.2d 28 (2d Cir. 1982). Defendant asserts that the warrant in the instant case was invalid because it permitted searches on the entire building at 400 South Wenona and ignored the fact that the building is actually three separate residences.

-8-

The government responds that even if Defendant were able to establish that he had exclusive use of a bedroom within the single-unit residence at 400 South Wenona, there were still common areas of the house that he apparently shared with others. Therefore, it does not necessarily follow that the search conducted pursuant to the warrant for the entire house was constitutionally invalid. The government argues that the cases cited by Defendant dealing with separate apartments are inapplicable. More applicable to the evidence presented at the hearing are cases such as *United States v. Pelayo-Landero*, 285 F.3d 491, 495-98 (6th Cir. 2002)(taking into consideration the totality of the circumstances that prevented error regarding the execution of the search warrant at the appropriate place), and *United States v. Ayers*, 924 F.2d 1468, 1479-80 (9th Cir. 1991)(addressing the propriety of a search of an entire family residence based on adult son's drug trafficking).

"[T]he validity of the search of [a residence containing separate dwelling areas] pursuant to a warrant . . . depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable."   *Maryland v. Garrison*, 480 U.S. 79, 88 (1987). "[S]ome latitude [is allowed] for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id.* at 87.  In this case, the law enforcement officers' utility search reflected that the house was "residential." Defendant testified at the evidentiary hearing that he leased a bedroom but did not have exclusive use of a bathroom, kitchen, or other common area.  There is no evidence that the officers clearly knew there were separate apartments or residences; they expected to find a single-family dwelling. Defendant's motion to suppress evidence based on an invalid search warrant will be denied.

## III

Accordingly, it is **ORDERED** that Defendant's motion to suppress (ECF Nos. 14, 16) is

**DENIED**.

It is further **ORDERED** that the time from April 1, 2011 to September 8, 2011, is

**DETERMINED** to be **EXCLUDABLE DELAY** pursuant to 18 U.S.C. §§ 3161(h)(1)(D) and

3161(h)(1)(H).


                                        s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge
Dated: September 13, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on September 13, 2011.

                        s/Tracy A. Jacobs
                        TRACY A. JACOBS